IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RICHARDSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JEFFREY S. RICHARDSON, APPELLANT.

Filed January 17, 2023.    No. A-22-420.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge, on appeal thereto from the County Court for Lancaster County: MATTHEW L. ACTON, Judge. Judgment of District Court affirmed.

Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Following a bench trial held by the county court for Lancaster County, Jeffrey S. Richardson was convicted on one count of destruction of property. He appealed his conviction and sentence to the district court for Lancaster County, which affirmed the county court's judgment. Richardson now appeals to this court assigning various errors. After reviewing the record and arguments, we affirm.

## II. BACKGROUND

Richardson and Ladonna Socha were in an on-again-off-again relationship for approximately 2 years. Sometime prior to March 2021, Richardson moved into Socha's home on Billings Drive (Billings House). Socha asserted that during the early morning hours of March 4,

Richardson kicked in the door to her residence and poured steak sauce on her clothes and bedroom carpet. As a result, Richardson was charged with destruction of property in violation of the Lincoln Municipal Code. The complaint was later amended to include a count for failure to appear.

At trial, Socha testified that on March 3, 2021, she had sent a text message to Richardson asking him not to return to the Billings House that evening. Despite her request, she was awoken by Richardson "banging" on the door and ringing the doorbell. According to Socha, Richardson proceeded to break the side door, gaining access to the inside of the house. Thereafter, he chased her upstairs where they continued to argue. She told him he needed to leave because she was going to go get her former husband to come over and fix the door so it would close. She left Richardson at the house, and when she returned, she saw steak sauce had been poured over her clothes and bedroom carpet. Security video from the residence showing Richardson outside the various doors of the house and ascending the inside stairs was offered and received into evidence. Over the objection of Richardson, the court also received as exhibit 2, text messages between Richardson and Socha, and exhibit 3, photographs of Socha's door after it had been repaired.

Following Socha's testimony, the State rested. The court granted Richardson's motion to dismiss count 2, failure to appear, but overruled the motion as to count 1, destruction of property.

Richardson testified on his own behalf. According to him, the week before March 4, 2021, he had been staying at his mother's house, but the Billings House was his primary address. On March 3, Socha had called him and asked him to come over. After spending time together at the Billings House, Richardson eventually left to get food for him and Socha. Upon returning, he ate his food downstairs, then brought Socha's food up to her in their bedroom.

Around 10:30 that night, Socha's phone began continually ringing. Richardson pressed her to answer it, but she kept ignoring it, which he characterized as unusual for her. Eventually, Socha succumbed and answered her phone on the speaker setting. Richardson testified that Socha's former spouse, Larry Shippen, was the caller and had asked Socha what time she was coming home for dinner. An argument erupted between Richardson and Socha, which led to Socha telling Richardson to leave.

Richardson packed an overnight bag, but when he exited the house to put it in the car, Socha locked the door, leaving him outside in the cold, dressed in shorts. Because he still had more items to retrieve, he tried to enter the house through the various doors. Richardson explained that was the reason why he is seen on the security video attempting to gain access to the house. He denied, however, that he poured steak sauce on Socha's clothes. Rather, he explained that the steak sauce was on the bedroom floor because that is where Socha had eaten her dinner, and he assumed it got on her clothes when she removed them from the laundry and threw them on her floor.

Richardson also offered an explanation for the repaired door jamb depicted in exhibit 3. He testified that he had broken that door a week earlier, with Socha's permission, when he had accidentally locked himself out of the house.

At the conclusion of the evidence, the court ruled from the bench, finding Richardson guilty of destruction of property. A sentencing hearing was scheduled, but prior to it commencing, Richardson's counsel made a motion for recusal of the sentencing judge. Richardson contended that prior to the judge being appointed to the bench, he prosecuted a case against Richardson and as a result of that experience, he was biased against Richardson. Following an evidentiary hearing, the court denied the motion. Richardson was sentenced to 120 days' detention in the county jail.

Richardson appealed to the district court asserting insufficiency of the evidence, evidentiary errors, excessiveness of the sentence, and ineffectiveness of counsel. The district court affirmed his conviction and sentence. Richardson now appeals to this court. Additional facts pertinent to Richardson's assigned errors are presented in the analysis.

## III. ASSIGNMENTS OF ERROR

Richardson assigns restated and renumbered, that the district court erred in finding the county court did not abuse its discretion in (1) admitting exhibits 2 and 3 into evidence, (2) finding sufficient evidence to support a conviction, and (3) failing to recuse itself. Also, the district court erred by not finding (4) Richardson's sentence was excessive, (5) his counsel was ineffective for failing to motion for recusal of the county court judge after the bond hearing, and (6) his counsel was ineffective for failing to call Officer Estrada to testify.

## IV. ANALYSIS

### 1. EVIDENTIARY OBJECTIONS

Richardson assigns that the county court erred by overruling his foundational objections to exhibit 2, text messages between him and Socha, and exhibit 3, photographs of the repaired door. He argues that the text messages do not contain a date and the photographs do not depict the damage caused because they were taken after the door was repaired.

#### (a) Additional Facts

##### (i) Exhibit 2

Exhibit 2 is a two-page exhibit containing photographs of Socha's phone. The first page is a series of messages sent by "Derek Livingston" to Socha. Both parties agreed that "Derek Livingston" was an alias that Richardson created to communicate with Socha to avoid implicating himself for violating a no-contact order issued in October 2020.

The time stamp on the first message is "WED 11:35 PM" and advises Socha "I'm there in 15 minutes." In the next message, time stamped 11:57 p.m., Richardson advised Socha that if she did not open the garage, he was going to "plow my car through the door" and she had "one minute to open it before I destroy your doors." Socha testified that exhibit 2 fairly and accurately depicted a portion of her communication with Richardson leading up to March 4, 2021.

When the State offered the text messages, Richardson objected. He argued the text messages lacked foundation because they did not contain a specific date as to when the messages were sent. The county court overruled Richardson's objection and received the text messages.

##### (ii) Exhibit 3

The State also offered exhibit 3, which consisted of photographs of several doors at the Billings House. The photographs of the side door show damage to the door frame, including a crack running the length of the door jamb. Socha testified that at the time the photos were taken, the frame had been altered so the door would close. Richardson objected on relevancy as to photographs other than the side and front doors that were allegedly damaged in the incident, and the court sustained that objection. He also raised a foundational objection to photographs of the

side door because the pictures were taken after the door had been repaired. The court overruled that objection.

(b) Standard of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*.

(c) Discussion

*(i) Exhibit 2*

Generally, the foundation for the admissibility of text messages has two parts: (1) whether the text messages were accurately described and (2) who actually sent the text messages. *State v. Henry, supra*. Sufficient foundation is established for the identity of the message sender when testimony provides context or familiarity with the manner in which the purported sender communicated. *Id*. The possibility of misuse or alteration goes to weight of the evidence, not admissibility. *Id*.

Richardson admitted at trial that he had sent the text messages under the alias "Derek Livingston," which satisfies both parts to establish foundation under *Henry*. While Richardson disputes when the messages were sent, dates are not required for foundation and Socha testified she received those messages leading up to the events of March 4, 2021. Furthermore, the text messages have time stamps that correspond with the time the incident occurred, which can be corroborated with the time stamp on the home security footage that places Richardson at the Billings House. Altogether, the text messages were properly admitted because foundation was properly established; thus, the county court did not abuse its discretion in admitting exhibit 2.

*(ii) Exhibit 3*

Regarding the admissibility of exhibit 3, a photograph is admissible in evidence if the subject matter or contents are depicted truly and accurately at a time pertinent to the inquiry and the photograph has probative value as relevant evidence. *State v. Merrill*, 252 Neb. 736, 566 N.W.2d 742 (1997). Whether there is sufficient foundation for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion. *Id*.

Neb. Rev. Stat. § 27-901 (Reissue 2016) provides that authentication or identification is satisfied by evidence that supports a finding that the photo in question is what the proponent claims. Photographic evidence is admissible when it is shown that it is a correct reproduction of what it purports to show, and such showing may be made by any evidence that bears on whether the photographic evidence correctly depicts what it purports to represent. *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005). Under the illustrative model of authenticating photographic evidence, a photograph is viewed merely as a graphic portrayal of oral testimony and is admissible

only when a witness testifies that it is a correct and accurate representation of facts that the witness personally observed. *Id*.

Socha testified that exhibit 3 contains photographs of her side door. She acknowledged that the photos were taken after Shippen repaired the door enough for the door to close. Although repaired, the crack in the door jamb is still visible. Socha's testimony was sufficient to provide foundation for the photos. Additionally, Richardson testified that he damaged the door, and defining the amount of damage is not relevant to establish a prima facie case for destruction of property. Socha identified the photos as depicting the doors in her house that Richardson damaged after Shippen had repaired the side door enough for it to close, thus, laying proper foundation for the photos. The county court did not abuse its discretion in admitting exhibit 3.

Accordingly, the district court did not err in finding the county court did not abuse its discretion in overruling Richardson's objections to exhibits 2 and 3.

## 2. SUFFICIENCY OF EVIDENCE

Richardson claims that a rational trier of fact could not have found the elements of destruction of property true beyond a reasonable doubt. He asserts there was no evidence of him damaging the side door or Socha's clothes, and even if he did damage the side door, Socha gave him permission to "shoulder his way inside." Brief for appellant at 12. Additionally, he claims since his fingerprints were not found on the steak sauce bottle, it further supports his innocence.

### (a) Additional Facts

Richardson contends that prior to March 4, 2021, he had accidentally locked himself out of the house. He contacted Socha to see when she might be returning, but because it would not be for several hours, she suggested that he try to gain access to the house through the side door. He testified that he remained on the phone with Socha while he "shouldered into the door" two or three times, causing it to open and damage the frame.

In addition to the exhibits previously addressed, Socha offered photographs of the clothing and carpet on which she claims Richardson poured steak sauce. They were received without objection. The photographs clearly show brown stains on clothes laying on the floor, hanging in the closet, and draping over the stair banister. Socha testified that the stains were not on the clothing when she left the house temporarily to retrieve her former husband and that no one other than Richardson was in the house when she left.

### (b) Standard of Review

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id*. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decided appeals from criminal convictions in district court. *Id*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finders of fact. *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

### (c) Discussion

As a preliminary issue, Richardson was convicted of violating the Lincoln Municipal Code, so the "ordinance rule" applies. See *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998). The ordinance rule provides that an appellate court will not take judicial notice of an ordinance not in the record but assumes that a valid ordinance creating the offense charged exists, that the evidence sustains the findings of the trial court, and that the sentence is within the limits set by the ordinance. *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992). While an appellate court cannot consider an ordinance's text that does not appear in the record, it can apply the ordinance's text as reproduced in the State's long-form complaint. *State v. Grant*, 310 Neb. 700, 968 N.W.2d 837 (2022). In the absence of any showing to the contrary, we assume that the material allegations in the complaint reflect the substantive content of the ordinance. *State v. Hill, supra*.

Richardson did not include the relevant municipal code in the record. The long-form complaint does include the charge against him, so we rely on it for the sufficiency of the evidence analysis. According to the long-form complaint, destruction of property under the Lincoln Municipal Code makes it unlawful

> for any person without proper authority to intentionally or knowingly cut, mark, mar, deface, break, alter the appearance of, damage, tamper with, convert to such person's own use, injure or destroy any real or personal property, public or private, of any description in the City, or did intentionally or knowingly place thereon any mark, word, label, symbol, or figure.

The standard for sufficiency of the evidence remains the same whether the evidence is direct, circumstantial, or a combination thereof. *State v. Thelen, supra*. Circumstantial evidence is evidence that gives rise to a logical inference that such fact exists without going directly to prove the existence of that fact. *Id*. Circumstantial evidence is not inherently less probative than direct evidence. *Id*. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Having found that the county court did not abuse its discretion in admitting exhibits 2 and 3, the circumstantial evidence shows Richardson broke the door on March 4, 2021, without authority from Socha. Richardson admitted to intentionally breaking Socha's door, which he acknowledges on appeal in his brief. Although he claims the door was damaged in February, with Socha's permission, she denied ever giving him permission to damage the door. The evidence was sufficient for a trier of fact to determine that the State met its burden of proof for destruction of property.

Richardson also denied spilling the steak sauce on Socha's clothes and carpet. Socha testified that when she left, there was not steak sauce spilled on any of her belongings. Although Richardson argues on appeal that his fingerprints were not found on the steak sauce bottle, the only mention of fingerprints in our record is contained in the portion regarding sentencing. Therefore, there was no evidence offered at trial on this issue.

Altogether, viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of destruction of property beyond a reasonable doubt. Richardson admitted to breaking through the door, and Socha testified that she did not give him authority to do that or pour steak sauce on her clothes. The text messages and the security video correspond with the series of the events. The district court did not err in finding the evidence was sufficient to support a conviction of destruction of property.

### 3. MOTION FOR RECUSAL

#### (a) Additional Facts

Richardson did not appear for his arraignment date, so a warrant was issued. Bond was set at 10 percent of $2,500. The State filed a motion to revoke bond after Richardson violated a no-contact order on June 11, 2021, and engaged in a domestic assault against Socha. Although the State requested that bond be revoked and increased to $25,000, the county court revoked bond and increased it to $100,000. The court based the amount on a police report from the domestic assault call and Richardson's prior criminal history, which included other domestic violence, assault reduced to disturbing the peace, violation of protection orders, multiple DUIs, third degree domestic assault, and stalking. Consequently, it found Richardson posed "an extreme danger" to Socha.

Prior to sentencing, Richardson authored two letters to the court. In them, he expressed his displeasure with the court's trial decision and recounted an experience he had in 2000 when the judge was a former prosecutor on a case in which Richardson was the defendant. He asserted that the court's bias was evident in its setting of bond at an unreasonable rate and in ruling from the bench at the conclusion of the trial.

The county court took judicial notice of all the journal entries and orders in the case, as well as the motions filed by and on behalf of Richardson. It submitted into evidence Richardson's criminal history, including the county attorney's report and the Lincoln Police Department arrest history. It also submitted into evidence a thumb drive that included a recording of the bond hearing.

The county court then walked through the analysis for judicial bias, noting first that Richardson never specified if he brought his claim under the Nebraska and U.S. Constitutions or under the Nebraska Revised Code of Judicial Ethics. Since Richardson made no showing of actual bias or structural error, the analysis proceeded under the code of judicial ethics. Ultimately, the county court concluded that there was no evidence shown that a reasonable person, who knew of the circumstances surrounding the case, would question the county court's impartiality. It noted that Richardson had not detailed the circumstances surrounding the alleged altercation from 2000 and Richardson's credibility was questionable given his lengthy criminal history. It therefore denied the motion to recuse.

### (b) Standard of Review

A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

### (c) Discussion

As a preliminary issue, Richardson's assigned error claims that the district court erred in failing to recuse itself. However, Richardson's argument is centered on the county court's failure to recuse itself. Since our review of the district court's decision sitting as an intermediate appellate court is grounded in the county court's decision, we review his assigned error as whether the county court should have recused itself. See *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

Richardson's claim of judicial bias argues that two key facts reveal bias: the judge was a former prosecutor that prosecuted Richardson, and the judge tripled the State's bond request during the motion to revoke bond.

A trial judge should recuse themselves when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). A judicial ruling alone almost never constitutes a valid basis for a bias or partiality motion directed to a trial judge. *State v. Buttercase, supra*. A party seeking to disqualify a judge for bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *Id*.

A party waives their right to obtain a judge's disqualification when the party knew for some time about the alleged basis for disqualification yet raised the objection well after the judge participated in the proceedings. *Id*. Judicial disqualification motions are timely submitted at the earliest practicable opportunity after the disqualifying facts are discovered. *Id*. In *State v. Buttercase, supra*, the Nebraska Supreme Court determined that failing to raise a judicial disqualification motion after one hearing resulted in a waiver, because the claims of bias were known prior to the hearing.

Here, Richardson claims the judge should have recused himself because he had formerly prosecuted Richardson in 2000 and his bias was evident from the amount by which bond was increased. But Richardson was aware of these two issues long before he moved to have the judge recused after trial. Therefore, having failed to move to recuse the judge at the earliest practical opportunity, he has waived his right to obtain the judge's disqualification.

### 4. EXCESSIVE SENTENCE

### (a) Additional Facts

Richardson was sentenced to 120 days in the county jail on his conviction of destruction of property. He assigns error to the district court's decision affirming the sentence imposed by the county court, arguing that imprisonment was unnecessary given the facts of the case.

(b) Standard of Review

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

(c) Discussion

As stated above, Richardson was convicted of violating a city ordinance. The ordinance rule also applies to assignments of error regarding excessive sentences. *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992). Unlike the analysis above though, there is no municipal ordinance regarding sentencing in the record or in the long complaint. Because the relevant ordinance detailing sentencing guidelines for destruction of property is not in the record, we assume that a valid ordinance exists, the evidence sustains the findings of the county court for sentencing, and the sentence is within the limits set by the ordinance. See *id*. Thus, we assume Richardson's sentence falls within the municipal code's sentencing guidelines, and we review for an abuse of discretion.

An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017).

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Blake, supra*. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Richardson was 51 years old at the time of sentencing. He has a lengthy criminal history, which includes disturbing the peace, violating a protection order, violating probation, an open container violation, and domestic assault. He was arrested in October 2020 for domestic assault. After October 2020, there was an order of no contact with Socha put in place as a condition of Richardson's bond. Richardson violated that condition soon after, as he testified he had been living with Socha for 7 months leading up to March 2021. His initial bond in the present case included a no-contact provision, but Richardson and Socha obtained a marriage license in Missouri prior to his bond being revoked in July.

Richardson denies breaking down the door on March 4, 2021, and denies pouring steak sauce on Socha's clothes, so his motivation for the offense is unknown. But the nature of the crime is serious, as it involved violence and destruction of property. Both Richardson and Socha's testimony reflect a tumultuous relationship that often led to destruction of property and threats of violence.

The county court acknowledged it considered the arguments made at sentencing, Richardson's comments, and the requisite sentencing factors. It also noted it considered the exhibits received, which included Richardson's criminal history. It did not abuse its discretion in sentencing Richardson to 120 days' imprisonment.

Richardson argues that under Neb. Rev. Stat. § 29-2260(2) (Reissue 2016), a term of imprisonment was not necessary for the protection of the public or to punish the defendant. Under § 29-2260(2), the language specifically states

> the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds imprisonment of the offender is necessary for protection of the public because:
>     (a) the risk is substantial that during the period of probation the offender will engage in additional criminal conduct;
>     (b) the offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; or
>     (c) a lesser sentence would depreciate the seriousness of the offender's crime or promote disrespect for the law.

The county court did not abuse its discretion by withholding probation. Richardson violated the condition of his bond multiple times and openly flouted the court's orders. Additionally, while he was out on bond he was arrested on a separate warrant and later charged with aggravated assault, which shows the risk is substantial that he would engage in additional criminal conduct if given probation. Furthermore, he was convicted of breaking down a significant other's door, while a no-contact order with that person was in place. Sentencing him to probation would depreciate the seriousness of his crime.

### 5. INEFFECTIVE ASSISTANCE OF COUNSEL

#### (a) Additional Facts

Richardson makes two claims of ineffective assistance of counsel. First, he claims that trial counsel was ineffective by failing to timely request that the trial judge recuse himself after the amount of his bond was tripled. Second, he claims counsel was ineffective for failing to call one of the investigating police officers to testify. He claims that Estrada, who investigated the March 4, 2021, incident, concluded that no probable cause existed to issue Richardson a citation. He argues Estrada should have been called to testify as to that fact.

Prior to trial, the State made an oral motion in limine to preclude any law enforcement officer from testifying as to their personal belief as to whether there was probable cause for a citation to be issued. Richardson's counsel opposed the motion, stating that she expected to call Estrada for that purpose. Because the case was being presented as a bench trial, the court overruled the motion, stating that it could make rulings on evidence at the time it is offered. It cautioned, however, that it did not see the relevance of an officer testifying whether probable cause existed because the court, itself, would decide whether the State met its burden of proof. Richardson's attorney did not attempt to call Estrada as a witness at trial.

Richardson is represented by appellate counsel different than his trial counsel.

#### (b) Standard of Review

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a

statute or constitutional requirement. *State v. Stelly*, 304 Neb. 33, 932 N.W.2d 857 (2019). An appellate court determines as a matter of law whether the record conclusively shows that (1) defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id*.

### (c) Discussion

To prevail on a claim of ineffective assistance of counsel, the defendant must show that their counsel's performance was deficient, and that this deficient performance actually prejudiced the defendant's defense. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). To show counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Proposed testimony that does not involve facts tending to negate fault or culpability does not amount to prejudice for an ineffective assistance of counsel claim. *State v. Fernando-Granados*, 289 Neb. 348, 854 N.W.2d 920 (2014).

The record on appeal is sufficient to address a claim of ineffective assistance of counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Collins, supra*.

### (i) Failure to File Motion for Recusal

Richardson argues that counsel should have requested recusal when the county court increased his bond to $100,000. We have set forth the details of the bond revocation hearing above and need not repeat them here. Based upon our review of that hearing, we find no deficiency in counsel's performance because any such motion based on the county court increasing Richardson's bond would have been meritless. See *State v. Thomas, supra* (concluding counsel was not ineffective for failing to seek meritless recusal).

The Nebraska Revised Code of Judicial Conduct states that a judge must recuse themselves from a case if the judge's impartiality might reasonably be questioned. Neb. Rev. Code of Judicial Conduct, § 5-302.11. A motion requesting a judge to recuse themselves on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *State v. Ely*, 295 Neb. 607, 889 N.W.2d 377 (2017). A trial judge should recuse themselves when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Id*. A party seeking to disqualify a judge for bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *State v. Buttercase*, 296 Neb. 304, 893 N.W.2d 430 (2017).

The county court increased Richardson's bond as a result of a motion to revoke bond filed by the State based on Richardson's violation of a no-contact order. After having been presented a copy of a police report describing domestic violence inflicted by Richardson against Socha in

which he assaulted and strangled her, the court granted the motion to revoke bond. In setting a new amount, the court considered Richardson's prior criminal history, his repeated violations of no-contact orders, and his past failure-to-appear convictions. Based upon the evidence before it, no reasonable person who knew the circumstances of the case would question the judge's impartiality after it raised Richardson's bond. Any motion to recuse the judge on this basis would have been meritless.

### (ii) Failure to Call Estrada

Richardson claims trial counsel was ineffective for failing to call Estrada to testify. He argues that Estrada's testimony would have supported his defense, because Estrada would have testified that there was no probable cause to issue Richardson a citation for destruction of property on March 4, 2021.

In a pretrial proceeding, the county court addressed a motion in limine relating to Estrada's proposed testimony. Although it overruled the motion, it indicated it would not find relevant any such testimony because it was up to the court to determine whether the State had met the burden of proving the elements of destruction of property. That being true, a law enforcement officer's testimony that he did not believe probable cause existed to issue a citation is irrelevant. Therefore, counsel was not ineffective for failing to call Estrada to testify and Richardson cannot show he was prejudiced by counsel's failure to do so.

### V. CONCLUSION

For the foregoing reasons, we find no merit to the issues raised on appeal. Therefore, we affirm the conviction and sentence.

AFFIRMED.